**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| GERALD DRAUGHN,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Civil Action No.: 19-cv-00109<br><br>**OPINION** |
|---|---|

**CECCHI, District Judge.**

Gerald Draughn ("Plaintiff") appeals a decision by the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). ECF No. 1. The Court decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of the Administrative Law Judge is affirmed.

## I. BACKGROUND

### A. Procedural History

On April 14, 2010, Plaintiff filed an application for SSI, alleging disability as of March 17, 2009, which was denied initially and on reconsideration. Tr.[1] at 24. On April 20, 2012, a hearing was held before ALJ Joel Friedman ("ALJ Friedman"). Id. at 37. ALJ Friedman issued his decision on August 30, 2012, concluding that Plaintiff was not disabled under the SSA at any point from the application date through the date of decision. Id. at 31. Plaintiff then moved to Ohio. Id. at 8. Plaintiff's subsequent request for review by the Appeals Council was denied on April 27, 2015. Id. at 1–5. He then appealed the decision in the district court in Ohio.

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 8.

On September 27, 2016, the United States District Court for the Southern District of Ohio reversed ALJ Friedman's decision, finding that he failed to specify his reasons for not giving controlling weight to the opinion of Plaintiff's treating physician, Dr. Agron Elezi, M.D. *Draughn v. Comm'r of Soc. Sec.*, No. 15-2440, 2016 WL 5387695, at *7–9 (S.D. Ohio Sept. 27, 2016) (the "Ohio Opinion"). The Ohio court held that ALJ Friedman's decision was not based on substantial evidence and remanded for further consideration of Dr. Elezi's opinion in the residual functional capacity ("RFC") analysis. *Id.* at *9.

At some point thereafter Plaintiff returned to New Jersey. On June 20, 2018, a *de novo* hearing was held before ALJ Andrea Addison ("ALJ Addison" or "the ALJ"). Tr. at 567–92. On September 10, 2018, ALJ Addison issued a decision which again concluded that Plaintiff was not disabled under the SSA at any point from the application date, April 14, 2010, through July 2017.[2] Id. at 544–53. Plaintiff then filed the instant appeal. ECF No. 1.

**B. Factual Background**

Plaintiff, an adult male, was born on September 11, 1972. Tr. at 88. Plaintiff has a twelfth-grade education and previously worked as a material distributer, bagger, and laborer. Id. at 89. He has not worked since 2010. Id. at 48–49. Plaintiff has sarcoidosis and asthma. Id. at 88.

At the hearing before ALJ Friedman in 2012, Plaintiff testified that he could not work due to fatigue, sharp pains in his abdomen, daily acute pain, frequent vomiting, and shortness of breath. Id. at 47. He further testified that a back injury and kidney stones prevented him from sitting for longer than a half hour and that standing for longer than a half hour to an hour caused lower back pain and shortness of breath. Id. at 48. Plaintiff was prescribed Prednisone for sarcoidosis,

[2] ALJ Addison's decision only covered up to July 2017 when Plaintiff became disabled on an unrelated impairment which was not the subject of ALJ Addison's decision. Tr. at 553.

Tramadol for back pain, had two inhalers for pulmonary COPD, and testified that he experienced side effects from his medications including fatigue, break outs, hot flashes, and "little mood swings." Id. at 51–52. Plaintiff testified that he lived with his mother at the time and sometimes cooked or helped her with chores around the house, and that his hobbies included reading and working with his hands. Id. at 56–57. Plaintiff could not lift more than 20 pounds, could walk for a couple blocks before requiring a break for fatigue, and stated that pain in his right shoulder prevented him from sleeping on that side or reaching overhead. Id. at 57–58.

At the hearing before ALJ Addison in 2018, Plaintiff testified that between April 2010 and July 2017 he suffered from breathing problems and asthma attacks for which he received breathing treatments and used an inhaler, and that as a result, he mostly stayed indoors and was very sensitive to pollen and extreme temperatures. Id. at 575–77, 581. Plaintiff again testified to suffering from kidney stones, sarcoidosis, and constant fatigue. Id. at 578–79.

## II. LEGAL STANDARD

### A. Standard of Review

District courts have jurisdiction to review final decisions by the Commissioner. 42 U.S.C. §§ 405(g), 1383(c)(3). The Court gives deference to administrative findings and does not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see* 42 U.S.C. § 405(g). Still, the Court must examine the record as a whole to determine whether the ALJ's findings were supported by substantial evidence. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted); *see Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)) ("In an adequately developed factual

record substantial evidence may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"). Thus, the Court will not disrupt an ALJ's decision merely because it would have reached a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

**B. Determining Disability**

To be eligible for SSA benefits, an individual must meet the definition of "disabled," i.e., "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A). The disability inquiry asks whether the individual's "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 1382c(a)(3)(B), 423(d)(2)(A); *see also id.* §§ 423(d)(3), 1382c(a)(3)(D) (defining "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques"). Disability determinations must be individualized and based on evidence cited at a hearing. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

**C. Sequential Evaluation Process**

The Social Security Administration uses a five-step sequential evaluation process to evaluate disability claims. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ learns whether the plaintiff is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if he

is not, the ALJ ascertains whether the plaintiff has a severe impairment that significantly limits his ability to work. *Id.* Third, if he has an impairment, the ALJ considers if, based on the medical evidence, his impairment meets the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), which results in a presumption of disability. *Id.* If his impairment is not listed, the ALJ determines how much RFC the plaintiff has despite his impairment. *Id.* at 262–63. Fourth, the ALJ considers whether the plaintiff has enough RFC to perform his past work. *Id.* Fifth, if not, the ALJ determines whether there exists other work in the national economy the plaintiff can perform. *Id.* The ALJ proceeds through the steps until it is determined whether the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at n.2.

## III. DISCUSSION

### A. Summary of ALJ Addison's Decision

ALJ Addison concluded that none of Plaintiff's severe impairments met or medically equaled a listed impairment and that Plaintiff had the RFC to perform light work with restrictions, for which jobs existed in the national economy. Tr. at 546–53. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 14, 2010, his application date. Id. at 546. At step two, the ALJ found that Plaintiff had five severe impairments: asthma, splenomegaly, right shoulder disorder, sarcoidosis, and osteoarthritis. Id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment under the Listings. Id. The ALJ then concluded that Plaintiff had the RFC to perform light work, as defined by the SSA, with the following limitations: occasional overhead reach with his dominant right shoulder; occasional climbing of

ramps or stairs, balancing, stooping, kneeling, crouching, and crawling (no climbing of ladders, ropes, or scaffolds); avoidance of concentrated exposure to extreme heat or cold, wetness, and humidity; avoidance of even moderate exposure to pulmonary irritants; off task 10% of the day due to symptoms; and an at-will sit/stand option without going off task. Id. at 547–48. At step four, the ALJ stated that Plaintiff had no past relevant work. Id. at 552. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform. Id. Accordingly, the ALJ concluded that Plaintiff was not disabled under the SSA between April 2010 and July 2017. Id. at 553.

**B. Analysis**

Plaintiff argues that this Court should remand to the Commissioner because ALJ Addison's decision failed to comply with the substantial evidence standard in its RFC assessment and subsequently failed to consider all of Plaintiff's RFC limitations in the hypotheticals posed to the Vocational Expert ("VE") at step five. ECF No. 16 ("Pl. Br.") at 13.

**1. Medical Opinion Evidence and RFC Analysis**

Plaintiff first argues that remand is required because the ALJ's RFC analysis failed to comply with the Ohio Opinion's findings and instructions for remand by disregarding the opinion of Plaintiff's treating physician, Dr. Elezi, and that as a result of this error, the "decisional RFC" was not supported by substantial evidence and was contradicted by the opinion of Dr. Elezi.[3]

---

[3] Plaintiff further argues that the RFC is also inconsistent with the opinion of the Commissioner's treating physician, Dr. Mark Weaver, M.D., but that is not supported by the record. *See* Pl. Br. at 24–25 ("Dr. Weaver's RFC opinion bears no resemblance to the decisional RFC. . . . [T]he ALJ didn't accept the findings of Dr. Weaver."). As explained more fully below, the ALJ did credit Dr. Weaver's opinion about Plaintiff's physical abilities, and as a result, the ALJ's RFC determination took into consideration, and was consistent with, the opinion of Dr. Weaver, in addition to other objective record evidence. In sum, the ALJ did not reject Dr. Weaver's opinion nor was the RFC determination inconsistent with Dr. Weaver's opinion.

Plaintiff relies heavily on the Ohio Opinion finding error in ALJ Friedman's failure to explain why he did not give controlling weight to Dr. Elezi's opinion. Id. at 15. Plaintiff argues that the Ohio Opinion's remand "centered around and upon the prior ALJ's rejection of treating physician Dr. Elezi's medical opinion." Id. at 16. The Court notes, however, that the Ohio court did not remand because ALJ Friedman discounted Dr. Elezi's opinion; it remanded specifically because ALJ Friedman "d[id] not sufficiently set forth good reasons" for not according controlling weight to the treating physician's opinion, and thus "d[id] not comport with [the] requirement that numerous factors must be considered where an ALJ does not give a treating source's opinion controlling weight." *Draughn*, 2016 WL 5387695, at *7. Thus, according to the Ohio court, the critical deficiency in ALJ Friedman's decision was his "fail[ure] to provide any detailed analysis behind his conclusion that Dr. Elezi's opinion [was] inconsistent with the totality of the medical evidence." *Id.* at *8. Moreover, to the extent the Ohio Opinion included a "directive" for remand, it was only for the ALJ to sufficiently explain whether controlling weight was given to the opinion of Plaintiff's treating physician and to support the RFC assessment with substantial evidence. *See* 20 C.F.R. §§ 404.1527(b), 404.1545(a)(1). As set forth below, the Court finds that ALJ Addison fully explained her decision to accord little weight to Dr. Elezi's opinion, and as such, she complied with the Ohio Opinion and the substantial evidence standard under the SSA and Third Circuit law.

An individual's RFC is the most he can still do in a work setting despite limitations caused by his impairments. *Id.* § 404.1545(a)(1). To make the RFC assessment, an ALJ must consider all medical opinion evidence together with other relevant evidence in the record. *Id.* § 404.1527(b). An ALJ must also allocate weight to each medical opinion on which she relies. *Shaud v. Colvin*, No. 15-2278, 2016 WL 1643405, at *7 (D.N.J. Apr. 26, 2016). Although opinions of treating or examining physicians typically deserve significant weight, an ALJ is not bound by these opinions.

20 C.F.R. § 404.1527(d); *Kanakis v. Comm'r of Soc. Sec.*, 649 F. App'x 288, 291–92 (3d Cir. 2016). It is the responsibility of the ALJ, and not the treating or examining physician, to make the final RFC decision. 20 C.F.R. §§ 404.1527(c), (d) (explaining that an ALJ considers, *inter alia*, the extent to which a medical opinion is consistent with the record as a whole and supported by relevant evidence). Furthermore, when faced with conflicting evidence, an ALJ has significant discretion in choosing whom to credit. *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (citation omitted) ("[T]he ALJ is entitled to weigh all evidence in making its finding . . . [and] is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences."); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."). Thus, a treating physician's opinion concerning the nature and severity of a claimant's impairments is given controlling weight when it is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

Applying these principles here, the Court finds that ALJ Addison's RFC determination was supported by substantial evidence and that she did not commit reversible error in deciding not to accord Dr. Elezi's opinion controlling weight. Indeed, the RFC assessment included: (1) a review of the extensive record evidence, including the medical opinion evidence from treating, examining, and consulting physicians, and the medical test results; (2) a discussion of Plaintiff's personal and medical history, conditions, symptoms, and testimony of the same; and (3) a detailed explanation of which evidence the ALJ credited and discredited (including Dr. Elezi's opinion). Tr. at 544–53.

On April 3, 2012, Dr. Elezi completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form, opining on Plaintiff's physical health and RFC. Id. at 535–36.

Dr. Elezi indicated that Plaintiff: could sit for 0–2 hours and stand/walk for 1 hour; had to alternate sitting and standing every 30 minutes; could occasionally lift/carry less than 10 pounds but never more; and could occasionally push/pull with his upper body but never with his lower body. Id. at 535. Dr. Elezi also indicated that Plaintiff could: climb stairs (rarely), but never ramps, ladders, ropes, or scaffolds; bend/stoop (rarely); balance (occasionally); and kneel or crouch (rarely). Id. Finally, Dr. Elezi indicated that Plaintiff had manipulative limitations: reaching in all directions (rarely), handling (occasionally), fine manipulation and skin reception (frequently); environmental limitations: temperature extremes, dust, humidity/wetness, and fumes, odors, chemicals, gases; and that he required accommodations: unscheduled breaks, absence from work 3 days or more per month. Id. at 536.

At the *de novo* hearing ALJ Addison specifically asked Plaintiff's counsel about the lack of objective evidence to support Dr. Elezi's opinion, which, as she noted in her decision, SSA regulations required her to consider. Id. at 551 ("[C]laimant's representative did not have an explanation regarding the lack of any notes or records from Dr. Elezi. The claimant's representative also stated that the record was complete, and therefore, the undersigned finds that there is nothing in the record to show that Dr. Elezi actually treated or performed any objective testing or analysis of the claimant or his records."); *see* 20 C.F.R. § 416.921 (explaining that "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source"); *id.* § 416.929(a) (explaining that an ALJ considers the extent to which a claimant's symptoms "can reasonably be accepted as consistent with the objective medical evidence," and that such statements cannot alone establish disability as there "must be objective medical evidence from an acceptable medical source"); SSR 16-3p (directing ALJs to consider all record evidence when evaluating symptoms).

Despite Plaintiff's contention that "Dr. Elezi sent [him] to several specialists for imaging and other testing," Pl. Br. at 19, the record was devoid of any progress notes from Dr. Elezi or any evidence that Dr. Elezi actually reviewed or relied on such testing in preparing the RFC form. After surveying the record for any evidence to support Dr. Elezi's opinion, and confirming the lack of such evidence with Plaintiff's counsel, ALJ Addison properly concluded that "[t]here is no evidence to support what evidence or findings Dr. Elezi relied upon to support his conclusions and opinions, and therefore, the undersigned finds that Dr. Elezi's opinions are unreliable and inconsistent with the overall evidence that show minimal treatment." Tr. at 551. As a result, Dr. Elezi's opinion was not entitled to controlling weight and ALJ Addison was permitted to evaluate and weigh it against the other medical evidence in the record. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Money v. Barnhart*, 91 F. App'x 210, 213 (3d Cir. 2004). The ALJ properly reviewed and discussed the other medical opinion evidence from consulting physician Dr. Weaver, and from state agency physicians Drs. K Lancaster, M.D. and Nikolaos Galakos, M.D., and explained why they were entitled to great, and partial weight, respectively. Tr. at 550–51. After thoughtful consideration of all the medical evidence, the ALJ accorded Dr. Elezi's opinion little weight because it was unsupported by any objective evidence and inconsistent with the evidence overall and with Dr. Weaver's objective findings.[4] Id.; *see Plummer*, 186 F.3d at 429 (noting that an ALJ may reject the opinion of a treating physician based on inconsistencies and/or conflicting medical evidence).

Specifically, the ALJ noted several inconsistencies between Dr. Elezi's opinion and the other record evidence, medical opinion evidence, and objective testing. For example, the

[4] In contrast to Dr. Elezi, the ALJ found Dr. Weaver's opinion, which was based on his physical examination of Plaintiff, consistent with the objective record evidence, including medical test results and Plaintiff's testimony about his activity level. Tr. at 550.

pulmonary testing "revealed no significant obstruction of airflow." Tr. at 549. In addition, Plaintiff's testimony about his activities "indicate[d] that he remained quite active prior to July 2017." Id. He had no problems attending to personal care needs and he "engaged in multiple activities" such as spending time with his girlfriend and his children, playing board games and cards, watching television, writing letters, and traveling alone or independently. Id. Thus, his reported activities were inconsistent with his claimed limitations. Id. Further, the ALJ noted that Plaintiff had "undergone minimal treatment" and "did not seek treatment for his ailments between the alleged onset date and 2017" as shown by the overall evidence and the relatively few treatment records prior to 2017. Id. at 549, 550. Moreover, Dr. Weaver noted that Plaintiff "exhibited normal sensation, satisfactory breathing sounds during testing, normal range of motion in his neck with no tenderness, and negative straight leg raising tests." Id. at 550. Dr. Weaver also found that although Plaintiff has some tenderness in his knees and legs, he "had no atrophy in his extremities, normal strength in all extremities, normal range of motion in all joints (except the right shoulder and left knee), and intact range of motion with no tenderness in his spine." Id. The ALJ also noted that based on his examination of Plaintiff, Dr. Weaver opined that although Plaintiff would have some limitations, he "would have the capability to perform physical activities involving sitting, occasional light lifting and carrying, handling objects, and travelling." Id. Finally, after reviewing Plaintiff's records, state agency physicians Drs. Lancaster and Galakos "found that the claimant would be able to lift/carry up to 20 pounds occasionally and up to 10 pounds frequently, stand/walk for up to 6 hours in an 8-hour workday, and sit for up to 6 hours in an 8-hour workday." Id.

Thus, in light of these inconsistencies, the ALJ was entitled to accord Dr. Elezi's opinion less evidentiary weight in the RFC assessment. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (citation omitted) ("Form reports in which a physician's obligation is only to check a

box or fill in a blank are weak evidence at best. . . . [W]here these so-called [RFC] 'reports are unaccompanied by thorough written reports, their reliability is suspect.'").

Based on the foregoing, the Court finds that ALJ Addison's decision was based on substantial evidence and that it complied with the Ohio Opinion's remand instructions. In making her RFC assessment, the ALJ adequately considered all the record evidence, properly weighed credibility, and explained her decision not to accord controlling weight to the opinion of Plaintiff's treating physician. *See Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him."); *Plummer*, 186 F.3d at 429. For these reasons, the Court will not disturb the ALJ's decision and thus will not remand.

**2. Step Five and Questioning of the Vocational Expert**

Plaintiff argues that the ALJ erred in posing "a non-evidentiary RFC in hypothetical questioning of the VE," and also appears to argue that the questions posed to the VE did not reflect all of his impairments. Pl. Br. at 28–30. Yet Plaintiff fails to identify which impairments were allegedly omitted from questioning. At step five, an ALJ is not required to submit to the VE every alleged impairment, only the credibly established ones. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Here, ALJ Addison complied with this requirement by posing hypotheticals to the VE that included all the limitations identified in the RFC assessment. Tr. at 586–87. Moreover, because the Court has already determined that the RFC was supported by substantial evidence, Plaintiff's claim that deficiencies in the RFC analysis negatively impacted questioning of the VE is without merit and the Court will not remand on this basis.

In conclusion, the Court finds that neither reversal nor remand is appropriate as ALJ Addison's decision is "comprehensive and analytical," *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981), and supported by substantial evidence, 42 U.S.C. § 405(g).

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the decision of the ALJ is affirmed. An appropriate Order accompanies this Opinion.

DATED: August 31, 2020

**CLAIRE C. CECCHI, U.S.D.J.**